Filed 1/21/26  Zacarias v. Montebello Unified School District CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RICHARD ZACARIAS, | B346369 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 24STCV07409) |
| v. | |
| MONTEBELLO UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Judge.  Affirmed.

Law Offices of Irving Meyer and Irving Meyer for Plaintiff and Appellant.

Gutierrez, Preciado & House, Calvin House and Kristina P. Stephenson-Cheang for Defendant and Respondent.

Plaintiff Richard Zacarias appeals from the grant of summary judgment in favor of defendant Montebello Unified School District (the District). Zacarias worked as a campus security officer for the District. His job entailed patrolling the campus on foot, supervising students, controlling crowds, and preventing fights. After Zacarias experienced hip and knee pain that made it very difficult for him to walk and exhausted all paid leave, he retired with medical benefits. Zacarias later sued the District, alleging claims for discrimination, harassment, retaliation, failure to engage in the interactive process, failure to offer reasonable accommodation, and whistleblower retaliation. Because Zacarias fails to show there are triable issues of material fact, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**
**A.     Zacarias's Employment at the District[1]**

In 2005, the District hired Zacarias to work as a campus security officer. At all relevant times, he was assigned to work at Montebello Intermediate School. Campus security officers were required to patrol and monitor school property and adjacent areas. They spent the majority of their day patrolling on foot.

Zacarias went to see his doctor after he began experiencing knee and hip pain. In late February 2023, Zacarias's doctor ordered him off work for the day and placed him on modified activity. His doctor limited him to intermittent walking and standing and occasional bending and twisting. He was not to climb stairs or ladders or lift or carry more than 10 pounds.

---

[1]     The facts are taken from the evidence submitted with the District's motion for summary judgment and Zacarias's opposition.

2

Two days after being placed off work, Zacarias's supervisor, Victor Solorio, met with him to discuss the accommodations that Zacarias needed to perform the essential functions of his job. To accommodate his restrictions, the District provided Zacarias with a chair and a resting place in the area he supervised and told him to follow his doctor's instructions.

A week later, Zacarias's doctor placed him off work until mid-March 2023. The District granted the leave request. In late March and April 2023, Zacarias's doctor completed a work status report, keeping Zacarias on the same modified activity previously ordered. The District agreed to accommodate Zacarias in the same manner.

In early May 2023, Zacarias's doctor continued to restrict his activity as before, but added that he needed to use a cane to walk. A few days later, Solorio met with Zacarias to discuss his limitations and whether he could perform the essential functions of his job while using a cane. It was determined during the meeting that Zacarias could not perform the following essential functions: supervision of students, crowd control, and preventing fights and student misconduct. Further, Zacarias mentioned he was in constant pain. To accommodate his restrictions, the District placed him on a paid leave of absence. Zacarias cites no evidence showing he objected to this at the meeting. Zacarias and Solorio signed a summary of interactive process memorializing the meeting. Zacarias later testified he did not feel he was treated unfairly when he was placed on paid leave.

In late May 2023, Zacarias's doctor continued to restrict him to the same modified activity. In early June 2023, the District's director of risk management, Wendolyne Traylor, met

telephonically with Zacarias to discuss his work restrictions. The District continued to allow Zacarias to remain off work.

Zacarias's doctor evaluated him again in August 2023 and completed a work status report keeping his activity modified in the same manner. Zacarias described his pain levels as "getting worse" and recalled at one point being in so much pain he could not walk. After reviewing the latest report, the District determined it could not safely return Zacarias to work with or without accommodation. The District continued to allow him to remain off work.

In late August 2023, the District sent Zacarias a letter informing him he had exhausted all full pay sick leave days he had accumulated and that he would receive 50 percent of his salary for illness up to a total of 100 working days. The District contacted him to schedule a meeting to discuss his work restrictions. Zacarias requested the meeting take place over the telephone because it was "extremely" hard for him to walk. During the telephonic meeting two days later, Zacarias told Traylor he did not feel that he could break up fights, that walking was difficult, and that he could not return to work. Zacarias said he had hip surgery planned and would get back to the District after it was completed. The District allowed Zacarias to remain off work.

Zacarias visited his doctor in October and November 2023. No changes were made to the restrictions on Zacarias's activity, and the District allowed him to remain on leave. A November work status report from his doctor placed Zacarias on modified activity through December 2023. This was the last medical note he provided to the District.

Zacarias did not return to work in January 2024. He was absent for more than two weeks. In violation of District policy, Zacarias did not provide a medical note to excuse his absence. Pursuant to the policy, the District could have terminated Zacarias for being absent for more than five consecutive days without providing a medical note, but the District did not do so.

Zacarias was set to exhaust all paid benefits on January 23, 2024, and would be placed on sick leave with no pay the next day. Zacarias met with District personnel a few days before to discuss his options. At his deposition, Zacarias said he was given only three choices: retire with medical benefits, retire with nothing, or be terminated. He understood he would no longer be on paid leave. Nobody told him the District would no longer accommodate his restrictions or injuries. Nobody told him he needed to retire because he needed hip surgery. Zacarias testified he was treated professionally during his interactions with the District and no one was discourteous about his accommodations or work absences. In Zacarias's view, "the only sensible thing to do was retire with [his] medical[ ] because [he] needed [his] operation." Zacarias submitted a retirement letter the same day as the meeting.

Zacarias had his surgery a few days after the meeting. Approximately five months later, a work status report indicated Zacarias was ready to "return to full unrestrictive work."

## B. The Operative Complaint and Motion for Summary Judgment

Zacarias filed his complaint against the District in March 2024. He asserted five Fair Employment and Housing Act

5

(Gov. Code, § 12940 et seq.)[2] (FEHA) claims—(1) disability and age discrimination; (2) retaliation; (3) failure to provide an accommodation; (4) failure to engage in the interactive process; and (5) disability harassment—and an additional claim for (6) whistleblower retaliation under Labor Code section 1102.5. Zacarias alleged the District's "illegal conduct" forced him to retire in January 2024. He claimed the District would not accommodate his work restrictions or enter into a meaningful and reasonable interactive process.

The District moved for summary judgment, or in the alternative, summary adjudication of all claims. It argued Zacarias's claims failed because it fully accommodated his disability-related limitations, did not take any adverse employment action against him, and did not engage in harassing conduct. Zacarias opposed the motion. With its reply, the District submitted 28 objections to the declaration Zacarias filed with the opposition. The trial court sustained more than half of the objections.

The trial court granted the motion for summary judgment. It found the District's evidence demonstrated it engaged in the interactive process with Zacarias in good faith and provided him with reasonable accommodations appropriate for his limitations, while Zacarias did not raise a triable issue through admissible evidence. As to the discrimination claim, the court concluded Zacarias failed to raise a triable issue as to two elements of the claim: whether Zacarias could perform the essential duties of his job with or without accommodation, and whether the District subjected him to an adverse employment action. Because

---

[2]     All further statutory references are to the Government Code unless otherwise stated.

6

Zacarias failed to raise a triable issue on the latter element, the court determined his retaliation claims failed as a matter of law. Lastly, as to the harassment claim, the court found the District met its initial burden and Zacarias failed to address the claim at all.

Judgment was entered for the District, and Zacarias appealed.

## DISCUSSION

### A.    Summary Judgment Law and Standard of Review

"'[A] summary judgment motion is directed to the issues framed by the pleadings.'" (*Van v. Target Corp.* (2007) 155 Cal.App.4th 1375, 1387.)  "A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense.  [Citation.]  If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact.  [Citation.]  A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636–637.)  The plaintiff must produce substantial responsive evidence sufficient to establish a triable issue; "'[r]esponsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact.'" (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415.)

We review the trial court's decision de novo, considering all the evidence in the moving and opposing papers except that to which objections were made and sustained.  (*Garcia v. D/AQ*

*Corp.* (2020) 57 Cal.App.5th 902, 907.)  The trial court's judgment is presumed correct, and the appellant bears the burden to affirmatively show reversible error.  (*Villalobos v. City of Santa Maria* (2022) 85 Cal.App.5th 383, 388 ["'"it is the appellant's responsibility . . . to point out the triable issues the appellant claims are present by citation to the record and any supporting authority"'"].)

## B.     Zacarias Forfeited Any Challenge to the Evidentiary Rulings

In the introduction section of his opening brief, Zacarias claims the trial court "'conclusory' sustained" (*sic.*) the District's objections to "every single statement" in his declaration.[3] (Boldface omitted.)  Zacarias forfeited any challenge to the trial court's evidentiary rulings.

It is Zacarias's burden to establish the trial court erred. (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679.)  However, Zacarias failed to properly raise the issue.  His brief "fail[s] 'to identify the court's evidentiary ruling as a distinct assignment of error,'" and there is no separate argument heading and analysis on the issue.  (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.) Furthermore, Zacarias fails to affirmatively show error in the court's rulings.  His brief does not contain citation to authority

---

[3]     The trial court sustained objections to specific portions of Zacarias's declaration but did not sustain objections to the entirety of it.  We disagree with Zacarias's suggestion the trial court did not provide any basis for its evidentiary rulings.  The written order provides reasons for why particular objections were sustained.

with argument as to why the court's ruling on any specific objection was wrong.  (*Salas*, at p. 1074.)  Therefore, the contention is forfeited.

## C.    Zacarias Does Not Show the Trial Court Erred as to the Failure to Accommodate Claim

Zacarias contends the District failed to offer him a reasonable accommodation.  We conclude he does not affirmatively demonstrate error.

Section 12940, subdivision (m), makes it an unlawful practice to "fail to make reasonable accommodation for the known physical or mental disability of an . . . employee."  The elements of a failure to accommodate claim are:  "(1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability."  (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192.)  A finite leave of absence may be a reasonable accommodation if the employee is expected to return to the job and the leave does not create undue hardship for the employer.  (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 41–42.)  However, an employer is not required to provide an indefinite leave of absence as a reasonable accommodation.  (*Id.* at p. 42.)

The District presented evidence showing it provided Zacarias a chair and resting area and told him to follow his doctor's orders after learning of his medical condition.  Zacarias does not dispute this accommodation was reasonable.  After the District determined Zacarias could not perform essential functions of his job due to his use of a cane and difficulty walking,

9

it placed Zacarias on paid leave beginning in May 2023. According to Traylor, Zacarias accepted this accommodation. Thereafter, the District received work status reports from Zacarias's doctor, which maintained the same restrictions through December 2023. Zacarias stated his condition worsened in the summer of 2023, causing so much pain he could not walk. The District continued to accommodate Zacarias by allowing him to remain off work until he retired in January 2024.

This evidence demonstrates a reasonable accommodation was offered and accepted by Zacarias. "Once a reasonable accommodation was offered and accepted with respect to known limitations, [the District] had no obligation to offer alternative accommodations unless [Zacarias] made a request or notified [the District] that its initial accommodation was failing." (*Miller v. Department of Corrections & Rehabilitation* (2024) 105 Cal.App.5th 261, 278 (*Miller*); *Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1108 (*Brown*) ["if employer did not know a reasonable accommodation was not working, a duty to provide further accommodation never arose"].) Because the District met its initial burden on summary judgment, the burden shifted to Zacarias to produce evidence creating a material issue of fact.

In an attempt to meet his burden, Zacarias raises arguments premised upon the assertion that the District should have provided him with an accommodation other than paid leave. Although Zacarias contends that he "never agreed" to be placed on sick leave, he fails to cite any evidence to dispute the District's evidence that he accepted the accommodation as appropriate when it was presented to him. (*Wentworth v. Regents of University of California* (2024) 105 Cal.App.5th 580, 596

10

(*Wentworth*) ["Courts of Appeal 'have the discretion to disregard contentions unsupported by proper page cites to the record' . . . and will conclude that parties forfeit arguments by failing to support statements in the argument section of a brief with record citations"].) "If a reasonable accommodation does not work, the employee must notify the employer, who has a duty to provide further accommodation." (*Brown*, *supra*, 60 Cal.App.5th at p. 1108.) Without evidence that Zacarias was unsatisfied with leave and requested a different accommodation, Zacarias's arguments fail.

Zacarias's arguments also fail for other reasons. Zacarias contends the District could have accommodated him in his campus security officer position with the same accommodations provided from February to May 2023, namely, a chair and resting place. However, Zacarias cites no evidence showing he could perform essential functions of his position with or without an accommodation after May 2023. He states only that he could use a cane to break up fights, but he does not speak to other aspects of supervising students, crowd control, and preventing misconduct before it occurred. Zacarias does not cite any authority or evidence to establish a leave of absence was unreasonable given his serious difficulty walking.[4]

---

[4] Zacarias also makes other arguments without citing any authority. He argues that it was illegal for the District to consider that he was experiencing pain in accommodating him. He argues that it could be considered a failure to accommodate, failure to engage in the interactive process, and a form of harassment that the District never told him why he was a liability. Because he does not adequately explain or support these arguments with authority, they are forfeited and unpersuasive on the merits.

Zacarias argues the District could have accommodated him by placing him at another school where a campus security officer was only required to sit at the front door and speak with guests. However, he does not cite any evidence showing any such positions were available when he was placed on leave.

Zacarias argues the District could have provided him with one of six "'desk'" positions identified in discovery as being available when he was placed on leave. In support, Zacarias relies on portions of his declaration to which the trial court sustained evidentiary objections. As discussed above, Zacarias forfeited any challenge to these evidentiary rulings. Even if we consider Zacarias's declaration, he fails to raise a triable issue of material fact. Zacarias merely provides a general job description for each position and claims the duties were similar to those of a campus security officer. (See *Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196 ["issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions'"].) For example, he describes the duties of a school police dispatcher and says he could do them because of his experience as a campus security guard. However, he does not demonstrate he was qualified or capable of performing all the essential functions of this position with or without accommodation after he was placed on leave. (See *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 377 (*Nealy*) ["FEHA does not require a reassignment . . . if there is no vacant position for which the employee is qualified"].) He also does not provide evidence that he had completed courses or obtained licenses needed for the job.

Finally, Zacarias contends the District had a duty to keep his job open because it knew he would be able to return to work. Zacarias does not cite any evidence showing that the District

12

knew if or when he would be able to return to work. The District was not required to hold his job open indefinitely. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226–227 (*Hanson*) [FEHA does "'not require the employer to wait indefinitely for an employee's medical condition to be corrected'"].)

**D.  Zacarias Does Not Show the Trial Court Erred as to the Failure to Engage in the Interactive Process Claim**

Zacarias contends the District failed to enter into a meaningful interactive process with him. He does not demonstrate error.

"'Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability.'" (*Nealy*, *supra*, 234 Cal.App.4th at p. 379.) "'The purpose of the interactive process is to determine what accommodation[ ] is required.' [Citation.] Thus, an 'employer cannot be held liable for failing to engage in [the] interactive process when the employee was in fact offered a reasonable accommodation.'" (*Miller*, *supra*, 105 Cal.App.5th at p. 282.) "Likewise, an employer cannot be held liable for failure to engage in the interactive process where the employee is unable to identify a reasonable accommodation that would have been available had the parties engaged in the interactive process." (*Id.* at pp. 282–283.)

""'[T]he interactive process of fashioning an appropriate accommodation lies primarily with the employee." [Citation.] An employee cannot demand clairvoyance of his employer. [Citation.] "'[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation

13

and sue the employer for not providing it.”’”’ (*Wentworth, supra,* 105 Cal.App.5th at p. 598; see *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 984 [“the burden of proving the availability of a reasonable accommodation rests on the employee”].)

In this case, the District had numerous interactive meetings with Zacarias to accommodate his restrictions from the time he presented the first work status report in February 2023 until his retirement in January 2024. This included a meeting in May 2023 where Zacarias and Solorio discussed whether he could perform the essential functions of the job and a meeting held telephonically in August 2023 because Zacarias said it was extremely difficult for him to walk. As a result of these meetings, the District accommodated Zacarias by providing a chair and resting area, followed by paid leave when the District determined he could not perform the essential functions of his position with or without accommodation. This sufficiently demonstrates reasonable accommodations were offered to Zacarias in response to his disability.

Zacarias does not cite any evidence disputing the District’s evidence of these meetings. He contends the District failed to meaningfully engage in the interactive process because it never mentioned the campus security officer positions at other schools that were primarily sitting positions or the six “‘desk’” positions that were available. However, as discussed above, Zacarias failed to produce evidence showing these positions were available or that he was qualified and capable of performing the positions with or without accommodation after he was placed on leave. Regardless of whether the District’s participation in the interactive process was deficient, Zacarias does not show the

14

District should have provided any of the positions he identifies as an accommodation. (*Miller*, *supra*, 105 Cal.App.5th at pp. 282–283.)

## E.     Zacarias Did Not Raise a Triable Issue of Fact as to His Discrimination Claim

Zacarias contends the trial court erred in granting summary judgment on his disability discrimination claim because he "established evidence of a prima facie case."[5] (Italics omitted.) We are not persuaded.

Section 12940, subdivision (a), prohibits an employer from discriminating against a person "in compensation or in terms, conditions, or privileges of employment" as the result of physical or mental disability. "To establish discrimination under section 12940(a), an employee must show that he or she

---

[5]      The heading in Zacarias's opening brief on this point states, "The District discriminated against [ ] Zacarias because of his disability and/or his age." (Some capitalization omitted.) The trial court noted that Zacarias's complaint did not allege any facts to support a claim for age discrimination under FEHA. The court concluded such a claim was "abandoned and moot." Zacarias does not dispute the District's argument that he forfeited the claim by failing to support it in the trial court or in his opening brief. Indeed, Zacarias merely alludes to an age discrimination claim with one sentence in this argument section: "Zacarias was replaced by a woman in 'her late twenties or earlier [t]hirties.'" "[A]n appellant must affirmatively demonstrate error through reasoned argument and discussion of legal authority. [Citations.] Simply hinting at an argument and leaving it to the appellate court to develop it is not adequate." (*Cryoport Systems v. CNA Ins. Cos.* (2007) 149 Cal.App.4th 627, 633.) Given Zacarias's failure to support any claim regarding age discrimination with legal authority and reasoned analysis, we find the point forfeited. (*Wentworth*, *supra*, 105 Cal.App.5th at pp. 595–596.)

(1) suffered from a disability, (2) could perform the essential duties of the job with or without reasonable accommodation, and (3) was subjected to an adverse employment action because of the disability." (*Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 344.)

"""[T]he parties' disputes in disability cases focus on whether the employee was able to perform essential job functions, whether there were reasonable accommodations that would have allowed the employee to perform those functions, and whether a reasonable accommodation would have imposed an undue hardship on the employer."" [Citation.] This is because, unlike other forms of discrimination prohibited by section 12940, subdivision (a), the statute 'specifically limits the reach' of its proscription against discrimination on the basis of disability, 'excluding from coverage those persons who are not qualified, even with reasonable accommodation, to perform essential job duties . . . .'" (*Miller*, *supra*, 105 Cal.App.5th at pp. 274–275.)

1.   *Performance of Essential Duties With or Without Accommodation*

The trial court concluded Zacarias failed to raise a triable issue of fact as to whether he could perform the essential duties of his position with or without accommodation. The District presented evidence showing it placed Zacarias on leave after determining he could not perform the essential functions of a campus security officer. Zacarias stated he was in pain and had extreme difficulty walking. Traylor testified that Zacarias told her during an interactive meeting that he did not feel he would be able to break up fights, that walking was difficult for him, and that he did not feel he could return to work. The District thus

16

presented sufficient evidence showing that Zacarias could not perform the essential duties of his position with or without accommodation. The burden shifted to Zacarias to raise a material issue of fact.

Zacarias does not cite evidence to dispute the essential duties of a campus security officer or any evidence to suggest his disability-related restrictions permitted him to perform all the essential duties. As we have discussed, he asserts his cane could be used to break up fights but does not show that he could supervise students, control crowds, and prevent misconduct as his job required. Therefore, Zacarias fails to raise a triable issue.

### 2. *Adverse Employment Action*

The trial court also concluded Zacarias did not present evidence that he was subjected to an adverse employment action. Zacarias argues the District forced him to retire, which constituted a constructive discharge and adverse employment action.

To establish a constructive discharge, the employee must show "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." (*Turner v. Anheuser–Busch, Inc.* (1994) 7 Cal.4th 1238, 1251; see *id.* at p. 1246 ["conditions giving rise to the resignation must be sufficiently extraordinary and egregious"].) "A constructive discharge is the practical and legal equivalent of a dismissal—the employee's resignation must be *employer*-coerced, not caused by the voluntary action of the employee or by conditions or matters

17

beyond the employer's reasonable control." (*Id.* at p. 1248.) "'[T]he determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim.'" (*Whitehall v. County of San Bernardino* (2017) 17 Cal.App.5th 352, 367.)

Zacarias does not allege any unusually aggravated conduct or intolerable work conditions. Zacarias went on leave in May 2023. He provided no further updates to the District about his condition after November 2023. He was absent without a medical note for multiple weeks in January 2024. Zacarias does not dispute the District could have terminated him due to this absence. Rather than terminate him, however, the District met with him to discuss his options. Zacarias understood he had exhausted his paid leave and retired with medical benefits. Nobody told him the District would no longer accommodate his restrictions or injuries. Nobody told him he had to retire because he needed hip surgery. There was no evidence that Zacarias was qualified and capable of performing the essential functions of another open position. Zacarias's decision to retire with benefits did not amount to a constructive discharge.

Zacarias also asserts the District would not allow him to return to work. However, there is no evidence that before he retired he provided evidence of when he would be able to return, and the District did not have to provide him with leave indefinitely. (See *Hanson, supra,* 74 Cal.App.4th at pp. 226–227.) With no known return date, and when given the opportunity, he

18

decided to retire with medical benefits after his paid leave was exhausted.[6]

## F. Zacarias Cannot Establish an Element of His FEHA and Whistleblower Retaliation Claims

To establish a prima facie case of retaliation under FEHA, a plaintiff must show, among other elements, that the employer subjected the employee to an adverse employment action. (*Nealy*, *supra*, 234 Cal.App.4th at p. 380.) Similarly, to prove a claim for retaliation under Labor Code section 1102.5, "the plaintiff 'must demonstrate that he or she has been subjected to an adverse employment action that materially affects the terms, conditions, or privileges of employment.'" (*Francis v. City of Los Angeles* (2022) 81 Cal.App.5th 532, 540–541.) As already discussed, Zacarias did not raise a triable issue concerning suffering an adverse employment action. For the same reasons, Zacarias cannot establish this element of his retaliation claims.

## G. Zacarias Does Not Show Error as to the Harassment Claim

Zacarias argues there was sufficient evidence to support his harassment claim. We disagree.

To prevail on a harassment claim under FEHA based on physical disability, an employee must show he or she was

---

[6]    To the extent Zacarias argues the District discriminated against him by failing to engage in the interactive process and to provide him with a reasonable accommodation, such evidence would not establish District liability for discrimination. "The refusal to participate in the interactive process or refusal to provide a reasonable accommodation 'do not constitute "adverse employment actions" in the context of a claim of discrimination.'" (*Miller*, *supra*, 105 Cal.App.5th at p. 276.)

19

subjected to harassing conduct that was (1) unwelcome; (2) because of physical disability; and (3) sufficiently severe or pervasive to alter the conditions of his or her employment and create an abusive work environment. (See *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 279 [setting out prima facie requirements for sexual harassment claims].)

"Whether a work environment is reasonably perceived as hostile or abusive . . . . 'must be evaluated in light of the totality of the circumstances'" including "'"the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."'" (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 628 (*Bailey*).) "[H]arassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706, italics omitted.) Official employment actions may be considered when evaluating a harassment claim if the conduct contributed to conveying an offensive message to the employee. (*Id.* at pp. 708–709.)

Zacarias failed to address the harassment claim when opposing the motion for summary judgment in the trial court. Accordingly, Zacarias forfeited his argument. (*Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635 ["'"[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court"'"].)

20

Even if we consider the merits, Zacarias fails to demonstrate error. Zacarias testified he did *not* feel he was treated unfairly when he was placed on paid leave. He also testified he was treated professionally during each interaction with the District and never experienced an interaction with someone that was discourteous about his accommodations or work absences. Zacharias does not show that the environment of the workplace became intolerable because harassment communicated an offensive message to him.

## DISPOSITION

The judgment is affirmed. The parties to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MORI, J.

We concur:

ZUKIN, P. J.

TAMZARIAN, J.

21